UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § § | CRIMINAL NO. 3:16-CR-0240-B |
| CELESTINE OKWILAGWE (1) a/k/a TONY OKWILAGWE, PAUL EMORDI (2), ADETUTU ETTI (3), LOVETH ISIDAEHOMEN (4), | § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Loveth Isidaehomen's Motion for Judgment of Acquittal and for a New Trial (Doc. 274). For the following reasons, the Court **DENIES** the Motion.

### I.

### BACKGROUND

On December 20, 2017, Defendant Loveth Isidaehomen was named in a second superseding indictment charging her with one count of conspiracy to commit health care fraud under 18 U.S.C. §§ 1347 and 1349. Doc. 113, 2d Superseding Indictment, ¶¶ 41–60. Specifically, the second superseding indictment accused Celestine Okwilagwe, Paul Emordi, Adetutu Etti, and Loveth Isidaehomen of conspiring to defraud Medicare and Medicaid "by concealing defendants Celestine Okwilagwe's and Paul Emordi's ownership interests and managerial roles in Elder Care and by submitting false and fraudulent claims to Medicare and Medicaid for reimbursement to which Elder Care was not entitled." *Id.* ¶ 43. Okwilagwe and Etti were also separately accused of making false

statements in health care documents for falsely representing that Gloria Ogabi was the sole owner of Elder Care, while Okwilagwe and Isidaehomen were in fact the sole owners of the company. *Id.* ¶¶ 61–64.

On October 22, 2018, Isidaehomen and the other three codefendants stood trial. After the presentation of evidence, the Court instructed the jury that in order to find Isidaehomen guilty of conspiring to commit health care fraud, they had to find beyond a reasonable doubt:

> (1) That the defendant and at least one other person made an agreement to commit the crime of health care fraud, as charged in the second superseding indictment;
>
> (2) That the defendant knew of the unlawful purpose of the agreement; and
>
> (3) That the defendant joined in it willfully, that is, with the intent to further the unlawful purpose.

Doc. 252, Jury Charge, 9. The Court further instructed that the Government "need not prove that the alleged conspirators entered into any formal agreement, nor that they directly stated between themselves all the details of the scheme." *Id.* Next, the Court instructed the jury that, in order to find the defendant guilty of conspiring to commit health care fraud, they must also find beyond a reasonable doubt that Isidaehomen made an agreement to commit a crime consisting of the following elements:

> (1) That the defendant knowingly and willfully executed, or attempted to execute, a scheme or artifice (a) to defraud a health care benefit program, Medicare and/or Medicaid, or (b) obtain money or property owned by or under the control of a health care benefit program, Medicare and/or Medicaid, by means of false or fraudulent pretenses, representations, or promises, in connection with the delivery of, or payment for, health care benefits, items or services;
>
> (2) That the defendant acted with a specific intent to defraud a health care benefit program;
>
> (3) That the false or fraudulent pretenses, representations, or promises that the

defendant used were material; and

(4) That the operation of the health care benefit program affected interstate commerce.

*Id.* at 10.

After the Court gave these instructions, the jury found Isidaehomen—and the other three codefendants—guilty on all counts. Doc. 253, Jury Verdict, 18–19. On November 6, 2018, Isidaehomen moved for a judgment of acquittal and for a new trial. Doc. 274. The Court now considers her Motion.

## II.

## LEGAL STANDARD

A.  *Motion for Acquittal*

A motion for judgment of acquittal under Federal Rule of Criminal Procedure 29 "challenges the sufficiency of the evidence to convict." *United States v. Medina*, 161 F.3d 867, 872 (5th Cir. 1998) (citing Fed. R. Crim. P. 29(a)). In assessing such a motion, the Court must consider the evidence, all reasonable inferences drawn from the evidence, and all credibility determinations in the light most favorable to the jury's verdict. *Id.* The Rule 29 standard does not require the evidence exclude every reasonable hypothesis of innocence. *United States v. Loe*, 262 F.3d 427, 432 (5th Cir. 2001). Rather, a judgment should be affirmed "if a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt." *United States v. Klein*, 543 F.3d 206, 212 (5th Cir. 2008) (quoting *United States v. Westbrook*, 119 F.3d 1176, 1189 (5th Cir. 1997)). Thus, the jury retains the sole authority to weigh any conflicting evidence and evaluate the witness credibility. *Loe*, 262 F.3d at 432.

B.      *Motion for New Trial Under Federal Rule of Criminal Procedure 33*

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Whereas a Rule 29 motion turns on the sufficiency of the evidence, a motion under Rule 33 turns on whether the weight of the evidence supports the verdict. *See Tibbs v. Florida*, 457 U.S. 31, 42 (1982). The Court is granted broad discretion in making a determination based on the weight of the evidence. *United States v. Robertson*, 110 F.3d 1113, 1118 (5th Cir. 1997). Thus, in assessing a motion under Rule 33, a court may weigh the evidence and assess the credibility of witnesses. *United States v. Tarango*, 396 F.3d 666, 672 (5th Cir. 2005). A verdict cannot be set aside simply because another result would be more reasonable. *Robertson*, 110 F.3d at 1118. Rather "[t]he evidence must preponderate against the verdict such that it would be a miscarriage of justice to let the verdict stand." *Id.*

## III.

## ANALYSIS

The crux of Defendant Isidaehomen's Rule 29 and 33 Motions is that there was not sufficient evidence at trial for the jury to find she knowingly and willfully entered into a conspiracy. Specifically, Isidaehomen argues there was no evidence (1) that she knew of Okwilagwe and/or Emordi's exclusions from Medicare and Medicaid; (2) that she willfully joined a scheme to defraud a government health care program; and (3) that she acted as an owner or manager at Elder Care or filled out benefit applications. Doc. 274, Isidaehomen's Mot., 7–8. Isidaehomen also argues she is entitled to a new trial because the Court erred in instructing the jury that it could find she had knowledge of a fact if they found she was deliberately indifferent to the existence of such fact. *Id.* at

16; *see* Doc. 252, Jury Charge, 10–11.

A. *Sufficient Evidence to Find Isidaehomen Knew of Okwilagwe and Emordi's Exclusions.*

First, the Court finds there was sufficient evidence at trial for the jury to find that Isidaehomen knew of Okwilagwe and Emordi's exclusions. While the Government admittedly did not provide direct evidence she directly knew of their exclusions, there was circumstantial evidence from which this conclusion could be drawn. Okwilagwe and Emordi were excluded because they pleaded guilty to misdemeanor theft in 2012. The indictment (charging felony health care fraud) that resulted in their pleas also named Isidaehomen. Gov't 62, 64 & 66. Isidaehomen did not plea and her case was eventually dismissed. Gov't Ex. 67. Significantly, three days after Okwilagwe and Emordi's exclusions took effect, Isidaehomen was added as a signatory on one of Elder Care's main bank accounts and starting signing more checks for the company in the course of its business. Doc. 278, Gov't's Resp., 13 (citing Tr. Agent Hernandez, 12:1–19:8 & 9:10–10:4). Okwilagwe, who previously signed almost all Elder Care's checks, no longer signed any. Gov't Ex. 37 & 38. The Government also stresses that the evidence showed that Isidaehomen signed checks to herself, Gov't Exs. 37 at 448–49; 38 at 918, 921; & 52, and signed checks to Emordi's wife (not Emordi himself) even though Emordi was still working at Elder Care. Doc. 278, Gov't's Resp., 18 & n.39 (citing Tr. Agent Hernandez). Before Emordi was excluded, his wife never received checks. *Id.* Further, there was no evidence that Emordi's wife worked at Elder Care when Isidaehomen was sending her checks. In all, there was sufficient evidence to find that Isidaehomen knew of Okwilagwe and Emordi's exclusions.

B. *Sufficient Evidence to Find Isidaehomen Knowingly and Willfully Agreed to Commit Health Care Fraud.*

Isidaehomen next contends there was not sufficient evidence showing that she knowingly and willfully agreed to conspire to defraud a health care benefit program. In return, the Government argues the evidence at trial supports her conviction because she knowingly and willingly agreed to (1) falsely represent Gloria Ogabi as Elder Care's sole owner and (2) conceal Okwilagwe and Emordi's involvement in Elder Care. The Court finds there was sufficient circumstantial evidence presented at trial for the jury to infer that Isidaehomen agreed to conspire with her codefendants to commit health care fraud.

The Court first holds there was sufficient evidence for the jury to find Isidaehomen agreed with her codefendants to falsely list Gloria Ogabi as the sole owner of Elder Care. Ogabi testified that in 2001 Isidaehomen first approached her to ask if they could use Ogabi's name as part of a home-health company that Isidaehomen and Okwilagwe were forming, which would eventually become Elder Care. Doc. 284, Tr. Ogabi, 9:11–21. Ogabi testified she did not understand why Isidaehomen and Okwilagwe needed her name, but she trusted Isidaehomen and signed the paperwork listing her as an owner of Elder Care. *Id.* at 11:3–5, 12:3–11. Ogabi's understanding was that she was just an employee, specifically a nurse, at Elder Care. *Id.* at 15:12–15. She never considered herself to be an owner, nor held herself out as such. *Id.* at 15:12–23. Yet the articles of organization for Elder Care listed Ogabi as an owner, with Isidaehomen and Okwilagwe. Gov't Ex. 29. Further, a few months later, these articles were amended at a board meeting to remove Okwilagwe and Isidaehomen's names, thus leaving Ogabi as the only listed owner of Elder Care. Doc. 284, Tr. Ogabi, 20:6–21:24 (discussing Gov't Ex. 84). Ogabi testified she was not present at this meeting and was not aware Okwilagwe and Isidaehomen resigned as owners of Elder Care leaving her as the sole owner under the articles of the company. *Id.* However, tax documents and state franchise forms listed only

Okwilagwe and Isidaehomen as officers or directors of the company with no mention of Ogabi. *Id.* at 6–7 (citing Gov't Exs. 27 at 10–11, 53–54, 44–45, 31–32; 30 at 2–8).

Additionally, Ogabi testified she was not involved with Elder Care during the relevant time of the conspiracy (from 2010 to 2016). Doc. 284, Tr. Ogabi, 43:8–14. Other Elder Care employees verified Ogabi did not work at Elder Care during that time. Doc. 278-1, Gov't's App'x, 7, 9 (Taylor, who worked at Elder Care, testifying she never met Ogabi during her employment). The evidence also showed that Ogabi later reached out to Isidaehomen to have her name removed from Elder Care's documentation. Doc. 284, Tr. Ogabi, 89:7–90–9. She spoke to both Isidaehomen and Okwilagwe about removing reference to her name. *Id.* But her name was not removed from these documents. *See, e.g., id.* at 115:4–9. Ogabi further testified that in 2016 Isidaehomen called her and left a voicemail asking to speak with her right before agents investigating this case contacted Ogabi; before that call, Ogabi had not heard from Isidaehomen since 2012. *Id.* at 36:8–37:7. From this, the Court finds the jury could have rationally concluded that Isidaehomen knowingly and willfully agreed to conceal Elder Care's true ownership.

Second, the Court finds there was sufficient evidence for a rational jury to conclude that Isidaehomen knowingly and willingly agreed to conspire to conceal Okwilagwe and Emordi's ownership interest in Elder Care. As discussed above, the Court already found that there was evidence at trial to show that Isidaehomen knew Okwilagwe and Emordi were excluded from Medicare and Medicaid. There was additional evidence that Isidaehomen was, to a large extent, involved with the formation of Elder Care and its operation, especially after Okwilagwe and Emordi were excluded. Doc. 278, Gov't's Resp., 9 (collecting franchise forms, tax returns, and the articles of organization with Isidaehomen's name on them). She notarized forms for the Texas Department

of Aging and Disability Services that certified that Elder Care's ownership was current and correct. *Id.* (citing Gov't Ex. 18 at 28). There was also evidence she frequently was working or visiting Elder Care. *Id.* at 10 (citing Doc. 286, Tr. Agent Hernandez, 55:12–14, 61:20–62:1; Tr. Taylor, 9:19–24, 14:21–25). Further, during the exclusion period, Isidaehomen was responsible for signing Elder Care checks, some of which she signed to herself and some of which she signed to Emordi or his wife. *Id.* at 11–12. At the same time, Okwilagwe and Emordi still had substantial involvement with Elder Care after their exclusions. *See id.* at 9–11. This supports the finding that Isidaehomen was actively conspiring to conceal Okwilagwe and Emordi's exclusions to allow Elder Care to continue billing Medicare and Medicaid. Thus, coupled with the evidence that she knew about Emordi and Okwilagwe's exclusions, the evidence at trial was sufficient to show that Isidaehomen knowingly and willingly agreed to conceal her codefendants' exclusions.

Finally, the Government points out that the evidence at trial showed that Isidaehomen was familiar with the health care industry and directly profited from the conspiracy. *Id.* at 13–15. The Court agrees the evidence supported these conclusions and thus her conviction. Not only did Isidaehomen have a substantial role in Elder Care's business, but she was also involved with two other home health care companies. *Id.* at 14 (citing Gov't Exs. 66 & 104). She admitted to knowing that Elder Care was billing Medicare and Medicaid during the exclusion period. Doc. 286, Tr. Agent Hernandez, 63:23–64:3. She was also on both of the primary accounts Elder Care used to operate its business, and she received payments from Medicare and Medicaid—one of which she was added to directly after Okwilagwe was excluded. Doc. 278, Gov't's Resp., 14 (citing Gov't Ex. 37 at 9, Gov't Ex. 38 at 5, and Tr. Agent Hernandez, 12:1–13:4, 22:2–23:25, 24:5–25:7, 26:13–28:1, & 34:2–6). Isidaehomen also wrote herself numerous Elder Care checks, from which she deposited over

$130,000 into her own personal account. *Id.* at 15 (citing Gov't Exs., 52 & 147 at 5).

In sum, despite the absent of evidence showing an explicit agreement to conspire, the evidence at trial was sufficient to permit the rational inference that Isidaehomen knowingly and willingly agreed to commit health care fraud. Moreover, the weight of the evidence on this issue supported the jury's verdict and there would be no miscarriage of justice to let it stand.

C. *Whether Isidaehomen Acted as the Manager of Elder Care or Filled Out Benefit Applications Herself is Nondispostive.*

Isidaehomen also argues that she never acted as a manager or owner of Elder Care and never filled out or filed government benefit program applications. But "[a] defendant need not have actually submitted the fraudulent documentation in order to be guilty of health care fraud or conspiracy to commit health care fraud." *United States v. Willet*, 751 F.3d 335, 340 (5th Cir. 2014) (citing *United States v. Umawa Oke Imo*, 739 F.3d 226, 235 (5th Cir. 2014)). The Court has already found there was sufficient evidence to support the jury's findings that Isidaehomen conspired to commit health care fraud; thus, this argument does not upset the jury's verdict.

D. *Deliberate Indifference Instruction.*

As for Isidaehomen's last argument, the Court finds that the deliberate indifference instruction was proper. A deliberate indifference instruction will be upheld if it has the required factual basis. *United States v. Delgado*, 668 F.3d 219, 227 (5th Cir. 2012). The instruction is proper only "when a defendant claims a lack of guilty knowledge and the proof at trial supports an inference of deliberate indifference." *Id.* (quoting *United States v. Moreno*, 185 F.3d 465, 476 (5th Cir. 1999)). Specifically, two inferences must be raised: "(1) the defendant was subjectively aware of a high probability of the existence of the illegal conduct; and (2) the defendant purposely contrived to avoid

learning of the illegal conduct." *Id.* (quoting *United States v. Lara–Velasquez*, 919 F.2d 946, 951 (5th Cir. 1990)). The Fifth Circuit will find error if the district court gave the instruction when the defendant does not claim a lack of guilty knowledge. *Id.* at 227–28.

The instruction was proper here because the thrust of Isidaehomen's defense at trial was that she was not aware of or did not have knowledge of the criminal activity that was the basis of the conspiracy. The Court detailed above the evidence that supported the following inferences: (1) that Isidaehomen knew that Okwilagwe and Emordi were excluded from Medicare and Medicaid, (2) that Isidaehomen knowingly and willingly agreed to conceal their ownership interest in Elder Care, (3) that Isidaehomen knowingly and willingly agreed to fraudulently represent that Gloria Ogabi was the owner of Elder Care to continue to profit from benefit program funds, and (4) that Isidaehomen was substantially involved with Elder Care (even more so after the exclusions), had knowledge of the health care industry, and directly profited from the objective of the conspiracy. Based on these conclusions, it was clear that Isidaehomen was subjectively aware of a high probability of the existence of illegal conduct at Elder Care and that she turned a blind eye to this criminal conduct to reap the benefits of the scheme. *See United States v. Brown*, 871 F.3d 352, 356 (5th Cir. 2017) (finding instruction proper when the defendant "knew it was highly likely that something illegal was afoot, but tried looking the other way while reaping the benefits of the likely criminal activity").

Contradicting her defense at trial and other arguments in her motion, Isidaehomen argues the deliberate indifference instruction is improper because she had actual knowledge of the facts underlying her charge. Doc. 274, Isidaehomen's Mot., 16. The Court rejects this argument because this is not a case where the defendant's actual knowledge of a fact is clear or undisputed; indeed,

Isidaehomen has repeatedly argued she had no knowledge of the criminal activity of the conspiracy.[1] *See, e.g.*, Isidaehomen's Mot., 7 ("the evidence was obviously insufficient to demonstrate that Isidaehomen had any knowledge of Celestine Okwilagwe or Paul Emordi's exclusion from Medicare, Medicaid, or any government program . . . ."). Thus, because "lack of guilty knowledge has been a recurring theme of [Isidaehomen's] case," *United States v. Soto–Silva*, 129 F.3d 340, 345 (5th Cir. 1997), and because the required inferences have been met, the Court rejects Isidaehomen's argument that the instruction was improper.

Finally, the Court notes that the conclusion that Isidaehomen had the requisite knowledge and intent—including the factual inferences supporting the deliberate indifference instruction—is not based solely on her marriage to Okwilagwe. Instead, the Court combines "the existence of a family relationship" together with "other circumstantial evidence"—*e.g.,* Isidaehomen's direct involvement with Elder Care and benefit received the conspiracy as signatory to Elder Care's accounts—are sufficient in this case to "support a conspiracy conviction." *See Willet*, 751 F.3d at 340 (holding that evidence was sufficient to support conspiracy conviction where couple was married for 35 years and were cosignatories on business's bank accounts and that husband benefitted as joint holder on accounts).

After hearing the evidence at trial and reviewing it again here, the Court concludes that a

---

[1] At trial, Isidaehomen's counsel continuously placed Isidaehomen's purported lack of knowledge at issue. For example, during opening arguments, her counsel argued: "the evidence is going to show that she didn't sign any paperwork. Not because she was trying to hide anything, but because she didn't know. She didn't know what was going on." Tr. Opening Argument of Mr. Staub, 14:5–9. And, at closing arguments, Isidaehomen's counsel argued: "She had no knowledge of what was going on, so she signed checks." Tr. Closing Argument of Mr. Staub, 36:23–25. He further pressed that "in order for you all to convict Ms. Loveth, the government has to show that she knowingly . . . that she knew that her husband and Paul [Emordi] were excluded from Medicare and Medicaid. I didn't hear any evidence of that whatsoever, none." *Id.* at 43:1–7. Isidaehomen's lack of knowledge was undoubtedly a critical theme for her defense at trial.

rational jury could have found beyond a reasonable doubt that Isidaehomen conspired to commit health care fraud. Furthermore, the weight of the evidence supports the jury's verdict and no manifest injustice will be done in letting it stand.

IV.

CONCLUSION

For these reasons, the Court **DENIES** Defendant Loveth Isidaehomen's Motion for Judgment of Acquittal and For a New Trial (Doc. 274).

**SO ORDERED.**

**SIGNED: February 7, 2019.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE